THE STATE OF INDIANA *v.* STYNER.

[No. 19,033.    Filed January 31, 1900.]

CRIMINAL LAW.—*False Pretenses.—Larceny.—Indictment.* — An indictment for obtaining property by false pretenses is not rendered bad by facts averred therein showing larceny, since different offenses may spring from the same act. *pp. 133, 134.*

SAME. —*False Pretenses. — Larceny.— Indictment.—* An indictment charging that defendant by falsely representing to the prosecuting witness that he would deposit a bank check of $1,000 in her name, and that he intended to marry her and had provided a house for them to live in as husband and wife, obtained her signature to a check for $725, sufficiently charges that the property was obtained by false pretenses, within the meaning of §2204 Horner 1897,

State *v.* Styner.

although the prosecuting witness believed she was signing and delivering a check for $125 instead of $725. *pp. 134–137.*

CRIMINAL LAW.—*Gift Induced by False Pretenses.*—One obtaining a gift by false pretenses may be prosecuted therefor, under §2204 Horner 1897. *p. 137.*

From the Tippecanoe Circuit Court. *Reversed.*

*W. L. Taylor,* Attorney-General, *C. E. Thompson* and *D. E. Storms,* for State.

*J. F. Hanly* and *W. R. Wood,* for appellee.

HADLEY, C. J.—Indictment for obtaining property under false pretenses. Motion to quash the indictment sustained, and the State appeals.

Omitting formal parts, the indictment, in substance, charges: That the defendant, Harry N. Styner, on the 15th day of March, 1899, at Tippecanoe county, did, then and there, feloniously and knowingly, falsely pretend and represent to Alice Lightle, with intent to cheat and defraud her (Lightle), and for the purpose of obtaining from her the property hereinafter named, that he, Styner, had a bank check for $1,000, executed to him by his father, which he intended to deposit in the First National Bank of Lafayette in the said Lightle's name; and in support of which representations Styner presented to Lightle, for her inspection, what purported to be a bank check for $1,000, executed by his father; and Styner did, then and there, further feloniously, etc., represent and pretend to her, the said Alice Lightle, that he intended to marry her, and that he had provided a house for them to live in as husband and wife; and did further, then and there, feloniously, etc., represent and pretend to her that a certain unsigned bank check, bearing an uncanceled revenue stamp, which he then and there had and presented to her for her examination, was a check for $125 on the First National Bank of Lafayette; while, in truth, it was an unsigned check for $725, a copy of which check is set out; that she, the said Lightle, relying upon said representations, and believing them to be true, and having

no means of ascertaining the contrary, and having un-bounded confidence in Styner, did, upon Styner's request, and being induced thereto by said false representations, sign her name to the check so represented by Styner to be for $125; and, being further induced by said false representations, did place the check, after signing, in Styner's posses-sion, with the intention and purpose of making him a pres-ent of $125; that the check so signed was her property, and of the value of $725; and that by means of said false repre-sentations, Styner obtained from Lightle her signature, bank check, and property; that, in truth, Styner had no bank check, executed by his father, for $1,000, or for any other sum, and he knew the check he presented to Lightle and requested her to sign and which was signed by her, was for $725 and not for $125; that Styner did not intend to marry Lightle and had not provided a home for them to live in as husband and wife; and that, induced by the false representa-tions, Lightle canceled the revenue stamp upon the check, after signing it upon Styner's request, and handed the check so signed to Styner; and that Styner, after receiving the same, indorsed his name on the reverse side.

The points made against the indictment are (1) that the facts averred constitute larceny and not false pretense; (2) the signed check was the property obtained, and it can not be separated; (3) the title to the property was not parted with by the delivery averred; (4) a gift can not be the subject of a false pretense; (5) the alleged false pretenses were not the operative cause for parting with the check.

The first three points are so closely blended that they will be considered together. As to the first, it does not follow that, because the facts averred exhibit a case of larceny, they do not also show a sufficient charge for obtaining prop-erty by false pretenses. There are many acts that offend against more than one of our criminal statutes. Larceny and robbery, assault and battery, assault and battery with intent to kill, assault and battery and an affray, are different

offenses that may spring from the same act. So, also, a sale of intoxicating liquors, without a license, to a minor on Sunday, while but a single act, may constitue three several and distinct offenses. *State* v. *Gapen*, 17 Ind. App. 524. So, also, a count for larceny may be joined with a count for obtaining the same goods by false pretenses or for obtaining the same goods by robbery, by burglary, by embezzlement, or for receiving, knowing it to have been stolen. §1817 Burns 1894, §1748 R. S. 1881 and Horner 1897.

The question, therefore, is: Do the facts pleaded constitute a sufficient charge of obtaining the property of the prosecuting witness by false pretenses? The principal distinction between the tortious taking of the property of another by false pretenses, and by such active fraud as constitutes larceny, is, that in the former the owner voluntarily and intentionally parts with the possession and .title of his property, being induced thereto by the false pretenses and deception of the defendant, while in the latter he ignorantly and unintentionally parts with the possession, but not with the title, it being essential to the transfer of title that the act be accompanied with knowledge and intention.

It will be observed that the indictment charges, in effect, that the false representations and pretenses were made for the purpose of inducing the prosecuting witness to execute and deliver a certain bank check to the defendant,—a check reprasented by him, and believed by her, to be for $125, but which was in fact for $725. From this it is argued by the defendant's counsel that, since Lightle executed and parted with but a single check, and that for $725 ($600 more than she intended), there was no intentional delivery of the particular check, no parting with the title thereto, and hence the act was larceny, and not false pretense; the contention being that there can be no division in the amount of the check to characterize the offense.

The charge is that Lightle believed the check was for $125 only, and that she intended, by its execution and delivery

to the defendant, to give him $125. The paper was signed and delivered by her as a valid check for $125, and, if free from fraud, would have been a valid delivery for that amount, even though the face of it called for a greater sum. A part only of a chose in action may be assigned. *Groves* v. *Ruby,* 24 Ind. 418; *Earnest* v. *Barrett,* 6 Ind. App. 371; *Fordyce* v. *Nelson,* 91 Ind. 447. And an assignment of part implies a delivery of part. If the indictment was for larceny, the logic of the defendant would require us to hold that it was not larceny since she purposely and intentionally delivered the check for a part of the amount called for. The test is: Did the defendant induce the prosecuting witness to sign and deliver to him the particular check by the false representations and pretenses made to her, as charged? If he did, we do not perceive why he is not guilty of obtaining her property by false pretenses, within the meaning of the statute. It would be a novel quality of justice that would grant the defendant his discharge upon his showing that, by his artful deception, he procured her to yield to him property of greater value than she intended. To illustrate: Suppose the defendant had gone to the prosecuting witness, with the false pretenses charged in the indictment, for a loan of $125, and that, moved by that peculiar confidence that comes of betrothal, and the hope of a home of her own, she had handed him a roll of bills, and requested him to count it for himself, and that, while acting under the request, the defendant had, by dexterous manipulation, thrown the ends of the large bills back, and brought the ends of the small ones forward, so that the extended bills would count but $125, and between them, in folds, were $600 of other bills, and she had permitted him to take the package as containing but $125, while in fact it contained $725, would it be doubted that he obtained the $125 by false pretenses? And while successfully prosecuting his false pretenses, if he embraced an opportunity to steal $600 more, should the last iniquity entitle him to immunity from punishment for the former? We do not see why.

In *Reg.* v. *Jessop*, Dears & B. C. C. 442, 7 Cox. C. C. 399, the prisoner presented to the prosecutor, who could read, a one pound note for change, telling her it was a five pound note, and the prosecutor, without reading the note, and without suspecting the falsity of the statement, gave the prisoner change as for a five pound note. Campbell, C. J., in reviewing the case, said: "We are all of opinion that the conviction was right. In many cases a person giving change would not look at the note, but, being told it was a five pound note, and asked for change, would believe the statement of the party offering the note and change it. Then if, giving faith to the false representation, the change is given, the money is obtained by false pretenses." The doctrine of this case is cited approvingly. 2 Bishop Crim. Law, §435; Clark's Crim. Law of Canada, 339.

The indictment is founded upon §2352 Burns 1894, §2204 R. S. 1881 and Horner 1897, which provides that "Whoever, with intent to defraud another, designedly, * * * by any false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money, or the transfer of any bond, * * * draft, or check or thing of value, * * * shall be imprisoned," etc.

It is charged that the defendant, feloniously and knowingly, falsely represented to Lightle that he had a bank check his father had executed to him for $1,000, which he intended to deposit in bank in her name; that he intended to marry her, and had procured a house for them to live in as husband and wife; that the check he requested her to sign was for $125; that she believed these representations to be true, and was induced thereby to sign and deliver the check to the defendant, intending thereby to give him $125. It is also averred that each of these representations was false; that he had no check for $1,000, or any other sum, executed to him by his father; that he did not intend to marry the prosecuting witness, and had not provided a house for

them to live in as husband and wife; and that the check was for $725, and not for $125.

Here we have averments that false representations concerning existing facts were knowingly and designedly made by the defendant to procure from the prosecuting witness the execution and delivery to him of a certain writing, the property of the prosecuting witness; that the effect of the false representations was to induce her to execute and deliver the writing; and this brings the case clearly within §2352 (§2204), *supra*.

As to the fourth point, it is claimed that a gift is not the subject of a false pretense. Some early cases, probably controlled by statute, hold that the statute against false pretenses operates only for the protection of trade and credit, and not against begging and benevolence. But our statute is clear, and admits of no exception, and we perceive no reason why it is less a crime to deceive another into yielding money, or other property, as a gift, than in yielding it under the pretense of trade; and so it has been held by this court. *Strong* v. *State*, 86 Ind. 208, 44 Am. Rep. 292. See also *State* v. *Matthews*, 91 N. C. 635; *Commonwealth* v. *Whitcomb*, 107 Mass. 486.

In the last case, under the pretense of being a clergyman in distress, the defendant obtained money relief from a minister; concerning which the court say: "But it is obvious that the case comes within the words of the statute. It comes also within the reason of the statute. There is as much reason for protecting persons who part with their money from motives of benevolence, as those who part with it from motives of self-interest."

The charge that the false pretenses concerning the $1,000 check, the defendant's intention to marry the prosecuting witness, the already provided house for them to live in as husband and wife, and the amount of the check, induced her to sign and deliver the check sufficiently shows the

operative cause, proof of all or any one of which would be sufficient to support the indictment.

The indictment is sufficient. Judgment reversed, and cause remanded with instructions to overrule the defendant's motion to quash the indictment.